

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 12, 1948

Hon. C. H. Cavness
State Auditor
Austin, Texas

Attention: Hon. Chas. C. Collum, Assistant State Auditor

Opinion No. V-500

Re: The franchise tax liability
of a corporation on notes
given to finance real prop-
erty improvements, after
these notes have been as-
signed by the original hold-
er, the real property has
been sold, and the purchas-
er has assumed payment there-
of.

Dear Sir:

You have requested the opinion of this Depart-
ment upon the following factual situation:

"It is requested that you render to this
office an opinion as to the construction of a
corporation's liability under Sec. 7084 R. C.
S. In our examination of franchise tax re-
turns we find corporations which have borrow-
ed money on their own notes, the payments of
which later have been assumed by individual
purchasers under the circumstances similar to
that described hereinafter:

"Fidelity Defense Housing Company, a cor-
poration, the owner of unimproved real estate,
finances improvements thereon by borrowing
from W. K. Ewing and Company, giving Fidelity's
notes, such as Exhibit 'A' attached. These
notes by their terms are payable over a per-
iod of twenty-five years and are secured by
mortgages against the real estate. As long
as these notes are direct obligations of Fid-
elity, there appears to be no question but

that each such note should be included in taxable capital for franchise tax purposes as provided by Article 7084 (A) R. C. S. However, two changes operate to effect circumstances; the first is that Ewing sells the notes, without recourse, to different insurance companies; the second is that Fidelity sells the real estate and the purchasers assume the respective obligations of paying the twenty-five year notes as shown in deeds of trust, such as Exhibits 'B-1' and 'B-2' attached. (You will observe that in Exhibit 'B-2' E. J. Burke is shown as vendor; the form is the same, and Exhibit 'B-2' should be considered as if Fidelity were shown as the vendor.)

"In the first change mentioned above, Ewing, another corporation, in turn sells the notes to an insurance company, still another corporation, which receives the notes under a conveyance form such as Exhibit 'C' attached.

"After Fidelity has sold the real estate and the purchaser thereof has assumed Fidelity's obligation to pay the installment note, is the amount of the note properly includible as taxable capital of Fidelity under Sec. 7084 (A)?"

Article 7084, R. C. S. 1925, as amended, provides in part as follows:

"(a) Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, or doing business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, (outstanding bonds, notes, and debentures shall include all written evidences of indebtedness which bear a maturity date of one (1) year or more from date of issue . . ." (Emphasis supplied)

Your question has never been passed upon by our Courts, and its answer must necessarily depend solely upon

the construction to be placed upon Article 7084, quoted above. If the notes in question constitute "outstanding notes" of the corporation then the amounts thereof must be included as taxable capital of the corporation. If, on the other hand, they do not constitute "outstanding notes" as that term is used in Article 7084, V. C. S., then the amounts thereof should not be included as taxable capital of the corporation.

It is well settled in this State, when one gives his note secured by a deed of trust on real estate and then subsequently sells the real estate, the purchaser thereof assuming the obligation of paying off the note, the purchaser is deemed primarily liable on the notes and the mortgagor becomes liable as surety.

Prior to the sale of the real estate securing one of the notes and the assumption by the purchaser thereof of the payment of the note, it is clear that the amount of the note should be included in the amount of the taxable capital of Fidelity. However, when Fidelity sells the real estate together with the improvements made thereon with the funds obtained by executing one of the notes in question, and the purchaser thereof assumes the payment of the note, Fidelity becomes only secondarily liable on the note as surety. From and after the date of the sale, Fidelity is relieved from all liability on the note unless two contingencies occur: First, that the purchaser fails and refuses to pay the note, and secondly, that sale of the realty will not bring enough to satisfy the note. We do not believe under such circumstances such notes constitute "outstanding notes", as that term is used in Article 7084, V. C. S., as amended.

In a letter opinion, dated August 20, 1934, to Hon. W. W. Heath, then Secretary of State, this department had before it a factual situation where a corporation purchased land and in part payment thereof gave two vendor's lien notes. The corporation sold said land to a purchaser who assumed payment of the two notes previously executed by the corporation. It was held that after the corporation sold the land to the purchaser, who assumed payment of the vendor's lien notes thereon, the corporation should not include the amount of these notes in its taxable capital under the provisions of Article 7084, V. C. S. While Article 7084, V. C. S., has been amended since the date of that letter opinion, the portion of the Article pertinent to this opinion was not changed.

In accordance with the letter opinion dated August 20, 1934, the Secretary of State has consistently construed the applicable provisions of Article 7084, supra, in situations arising in similar cases that upon the assumption of a written evidence of indebtedness secured by a lien on real or personal property by the purchaser thereof the borrowed capital evidenced by the execution of the original written evidence of indebtedness ceased to be used by the corporation as a part of its taxable working capital. This construction has been uniformly adhered to for a period of over thirteen years, and under the well-established rule of law in Texas such departmental construction is entitled to great weight.

It is immaterial that Ewing and Company, the payee of the notes, subsequently sold them to third parties without recourse.

It is our opinion the amount of the notes executed by the Fidelity Defense Housing Company to W. K. Ewing and Company should not be included for the purpose of taxation under the provisions of Article 7084, V.C.S., as amended, after Fidelity has sold the real estate securing the notes and the purchaser thereof has assumed payment of the notes.

### SUMMARY

Notes executed by a corporation, maturing more than one year from date of issue, in payment of money borrowed to erect improvements upon property which it subsequently sold to purchasers who assume payment of such notes, do not constitute "outstanding notes" of such corporation, taxable under the provisions of Article 7084, V. C. S., as amended.

Yours very truly,

APPROVED

*Price Daniel*

ATTORNEY GENERAL

DMG:mrj

ATTORNEY GENERAL OF TEXAS

By *Durward M. Goolsby*

Durward M. Goolsby
Assistant